## Mary Holcomb *versus* Peoples' Savings and Meadville Savings Bank.

1. The Act of 1848 was designed to protect a married woman in the enjoyment of her property which she acquired after its passage. Her marital relations prevent her enjoying it separate and apart from her husband. While living with him she may not have a possession separate and distinct from his possession. If, however, it be clearly shown that the original property was hers, then all the product and increase become hers, as long as they can be followed or identified. The fact that her husband acts as her agent in buying and selling and investing her money, does not, against her consent, transfer her right of property to him.

2. The mere fact that there may be a difficulty in determining which articles are the product of a married woman's property does not justify the court in taking the question from the jury. While the husband is entitled to the reasonable services of his wife, yet if a portion of her time was occupied in the care and management of her separate estate, whereby its productiveness was increased, the product is not thereby made liable for his debts.

[Holcomb v. Peoples' Savings Bank.]

November 27th 1879. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON and TRUNKEY, JJ. STERRETT and GREEN, JJ., absent.

Error to the Court of Common Pleas of *Crawford county :* Of October and November Term 1879, No. 57.

Feigned issue, wherein Mary Holcomb was plaintiff, and the Peoples' Savings Bank and the Meadville Savings Bank defendants.

The Meadville Savings Bank entered a judgment on the 23d day of October 1878, against C. T. Holcomb and Thomas D. Durant, in the sum of $120.75, and on the same day issued execution to No. 279 of November Term 1878.

The Peoples' Savings Bank entered a judgment on the 8th day of October 1877, against Thomas D. Durant and Charles T. Holcomb, in the sum of $1571.62, and on the 2d November 1878, issued execution to No. 297, November Term 1878.

On these executions the sheriff made levy on the 9th day of November 1878, on "two horses, double harness, wagon, one crackey, one buggy, one light double harness, lot of hay and oats, lot of corn fodder, two sheep, two pigs, six cows, three calves, mowing-machine, one seed sower, all farming tools, and a general assortment of household goods," as of the property of the said Thomas D. Durant and Charles T. Holcomb. None of it in fact was the property of Thomas D. Durant, but was in the possession of Charles T. Holcomb and Mary Holcomb, his wife, on the farm where they resided.

. Mary Holcomb, the wife of Charles T. Holcomb, claimed the property to be her own as to some of it, and the balance she claimed as belonging to herself and her husband, as being the fruits of the joint ownership of the real estate which was willed to her and her husband by her father, Bailey Fullerton. Upon this claim being made, the feigned issue here was made up.

At the trial, before Church, P. J., the plaintiff submitted the following points, to which are subjoined the answers of the court:

1. That if the jury find from the evidence that the property in dispute, and claimed by Mary Holcomb, is the fruits of the joint ownership and occupancy of the real estate which was willed to Mary Holcomb and Charles T. Holcomb by Bailey Fullerton, that the plaintiff holds the property in dispute in entirety, and said property is secured to the plaintiff by the provisions of the Act of April 11th 1848, securing to married women their separate estate, and is not liable for the debts of her husband, Charles T. Holcomb, and their verdict must be for the plaintiff.

Ans. " We cannot charge as requested, as the proof is not sufficient to entitle the plaintiff to claim the whole of this property as against the creditors of the husband."

2. That if the jury find from the evidence that the property in

dispute, or any part thereof, was paid for by or out of the separate estate of the plaintiff which accrued to her during coverture and not through her husband, their verdict must be for the plaintiff for all the property in dispute so paid for by the plaintiff.

Ans. " Affirmed, but the jury must have the evidence of such property being paid for by the wife, and there is not sufficient evidence of the wife's ownership of the whole of the property in dispute by purchase as is required by law."

3. That the land being owned by the husband and wife jointly, the presumption of law is, that the growth or fruits of the land and the farming implements necessary to the production of such fruits belong to them as entireties and not in two equal or other proportions, and that during the life of the wife, such personal property cannot be sold from her on execution for the debts of the husband.

Ans. " Refused."

In the general charge, the court, inter alia, said : " We say to you that to the personal property levied on by the sheriff, such as farming utensils, the plaintiff has not shown sufficient title in herself to recover in this suit. * * * That all the property levied on in this case, or such portion of it as is the fruit or result of the labor, energy or industry of either the plaintiff or her husband is the property of the husband, and liable for the payment of his debts. * * * Apply that rule to the facts in this case and see what we have. Mrs. Holcomb herself is put upon the witness stand. She claimed one horse, so far as the court sees, except through the mouth of her counsel, she only claimed one horse. Cows she claimed—she bought one of those herself. She lays no claim to the mowing-machine, except through the mouth of her counsel. Moreover, if she did, how has she shown what became of the money derived from her sister's estate, some twenty odd years ago ? Some eight or twelve years ago she had $700. She said it was used in and about the house and farm, for the purpose of making gain with it, giving it to her husband to use. Mr. Holcomb says the cows were raised from calves; and when he was in the drove business, buying and selling cows, when he would find a good cow in the drove, he would put it into his own stock ; he would take one out of the drove and make an exchange for one in his own dairy. Here the husband was buying and selling and owning all this property. We say to you that there is not sufficient evidence as to her ownership of either the mowing-machine, farming utensils, or this other movable property, horses, wagon, crackey wagon, buggy —as far as the buggy is concerned, Mr. Holcomb says he bought it himself. * * * As to the crops harvested this last year—corn, hay, oats—we find more difficulty in that because of the peculiar manner in which these parties hold under the will of the father-in-law of one and the father of the other. We will charge you that

these crops are the property of Charles T. Holcomb, and not of Mary Holcomb; and we will reserve that point and give the parties an opportunity to be heard upon that question. But, so far as you are concerned, we will instruct you that the growing crops belong to Charles T. Holcomb and not to Mary Holcomb. She has not shown title to them."

The verdict was for defendants. Mary Holcomb took this writ and alleged that the court erred in the answers to the above points, and the portions of the charge noted, and in refusing a motion for a new trial, and ordering judgment to be entered for defendants.

*G. W. Hecker* and *F. L. Blackmarr*, for plaintiff in error.— Where an estate is granted in fee to a man and his wife, both are seised of the entirety; neither the husband nor the wife can dispose of any part without the assent of the other, but the whole must remain to the survivor; the death of one neither increases nor decreases the interest of the other; the interest of husband and wife is made up of indivisible parts: Stuckey v. Keefe's Executors, 2 Casey 399. Rush v. Vought, 5 P. F. Smith 437, governs this case. There it was decided that "when the evidence clearly shows a separate property in the wife, she is entitled to the benefit of its products and avails." See also McCurdy v. Canning, 14 P. F. Smith 40. Since the Act of 11th April 1848, it has been settled by numerous decisions of this court, that the proceeds of the wife's separate property cannot be seized for the husband's debt. If her property be real estate, the fact that her husband's labor assisted in creating the products derived therefrom does not make them liable for his debt: Silveus's Executors v. Porter et ux., 24 P. F. Smith 448; Brown v. Pendleton, 10 Id. 419. The object of the statute was to protect the wife's estate from being taken by the husband's creditors: Haines v. Ellis, 12 Harris 255. The act does not require her use and possession of the property to be exclusive of her husband: Hoar v. Axe, 10 Harris 384; Manderbach v. Mock, 5 Casey 43.

*H. J. Humes* and *A. G. Church*, for defendants in error.—It is not enough to show that a married woman received money from her father before the passage of the Act of 1848, for that became her husband's property by virtue of the marriage relation. So far as regards creditors, all the money and personal property of the family are presumed to belong to the husband, until the contrary be shown, and all the earnings of the family, with some exceptions, are conclusively presumed to be the husband's: Walker v. Reamy, 12 Casey 410; Bradford's Appeal, 5 Id. 513.

The joint earnings of a husband and wife belong to the husband and not to the wife; also, the earnings of the wife during cover-

ture, belong to the husband: Hallowell et al. *v.* Horter, 11 Casey 375; Raybold *v.* Raybold, 8 Harris 311.

The husband and wife had here so mingled their funds that they cannot be distinguished, and in that event the law decides they belong to the husband: Earl et al. *v.* Champion, 15 P. F. Smith 191; Rhoades *v.* Gordon, 2 Wright 277; Aurand *v.* Schaffer and Wife, 7 Id. 363; Gamber *v.* Gamber, 6 Harris 366; Keeney *v.* Good, 9 Id. 349.

Where the estate is in the husband and wife by entireties the husband has not only an equitable interest, but he has an interest greater than hers clearly defined by law, and has the absolute control over the estate, save the right to oust her concurrent possession.

The Supreme Court, as yet, only decides that the Act of 1848 protects the wife's possession of land held by entireties, and surely they cannot go further and say that this act will allow a husband and wife to enter into a partnership in land and of their joint funds, labor and skill acquire a large property and thus shield it from the husband's creditors. The act in no way refers to property given to a husband and wife, and if it were personal property it would belong to the husband alone. If there is no tenancy by entireties in personal property, the policy and principles of the common law would give it to the husband.

Mr Justice MERCUR delivered the opinion of the court, January 19th 1880.

This was a feigned issue to try the right to certain personal property claimed by the plaintiff in error, but levied on as the property of her husband. The Act of 11th April 1848, declares "every species and description of property, whether consisting of real, personal or mixed, which may be owned by or belong to any single woman, shall continue to be the property of such woman, as fully after her marriage as before, and all such property of whatever name or kind, which shall accrue to any married woman during coverture, by will, descent, deed of conveyance, or otherwise, shall be owned, used and enjoyed by such married woman as her own separate property; and the said property, whether owned by her before marriage, or which shall accrue to her afterwards, shall not be subject to levy and execution for the debts or liabilities of her husband." Property of a married woman acquired after the passage of this act is as clearly exempt as the property of any third person, from execution against her husband. Her property is thereby fully protected. To guard against an abuse of this law, and to prevent the property of the husband from being held in the name of his wife, to the injury of his creditors, she must establish her right to the property which she claims by clear and satisfactory proof. If purchased by her, she must show by like proof that it

[Holcomb v. Peoples' Savings Bank.]

was paid for out of her own separate funds. If her right to it when acquired is thus established, it is not necessary, to protect it from the creditors of her husband, that her possession should be exclusive of him. Owing to the intimate character of the marriage relation, such a rule would deprive the wife of the use and enjoyment of her property which the act contemplates: Hoar v. Axe, 10 Harris 381; Manderbach v. Mock, 5 Casey 43; Barncord v. Kuhn, 12 Id. 383; Walker v. Reamy, Id. 410. When the evidence clearly shows the separate property to be in the wife, she is entitled to the benefits of all its products, increase and avails. The ownership of a farm carries with it the right to its products; the ownership of personal estate draws to it the increase thereof: Rush v. Vought, 5 P. F. Smith 437; Silveus's Ex'rs v. Porter, 24 Id. 448.

The uncontradicted evidence in this case shows that by the will of her father, proved in 1854, the farm on which she and her husband lived was devised to them. They then took by entireties and not by moieties, and the husband could not by his own conveyance, without his wife joining, divest her estate: Doe v. Parratt, 5 Term Rep. 652. They were not as joint tenants, seised of an undivided moiety of the whole, but being husband and wife were seised of the whole. The husband had the entire use, and the wife had the entire use: Plowden 58. Such an estate is not subject to the Statutes of Partition: 4 Kent's Com. 363. The estate which the wife thereby took was not changed by the Act of 1848 relating to married women, but it was, by its provisions, protected from the dominion and control of her husband. So fully was her estate therein secured to her, that a purchaser at sheriff's sale, under a judgment against her husband of his interest in the farm, could not recover possession during her life. He could not dispossess her of any part of the premises, nor could she be compelled to take a stranger into concurrent possession with her. She has a right to hold it with her husband alone. Her right is not impaired by the Act of 1848, but she is protected in its enjoyment: Diver v. Diver, 6 P. F. Smith 106; McCurdy v. Canning, 14 Id. 40; Gillen's Executors v. Dixon, 15 Id. 395. Nor would the fact that her husband's labor assisted in creating the products derived from her estate in the land, make them liable for his debt: Rush v. Vought, supra; Silveus's Ex'rs v. Porter, supra.

In addition to the estate in the farm the evidence also shows that the plaintiff in error afterwards received divers sums of money; $100 dollars from her mother's estate, $240 from her sister's estate, $450 from the proceeds of land at Erie, acquired from her father's estate, and $700 from a sale of part of the farm. Considerable timber grown on the farm was sold. She testified that the sums she received from the several estates were used in buying horses, cows, household goods, and in keeping up the farm. That

[Holcomb *v.* Peoples' Savings Bank.]

she made and sold butter and cheese, and they raised and sold grain and stock. The testimony of her husband concurs substantially with hers. They resided on the farm continuously for some eleven years before the property in question was taken in execution. He was engaged in buying and selling stock, and in trading and exchanging hers as well as his own. Her money was mingled to some extent with his, in making purchases, yet there is evidence tending to show that her right to some of the property acquired, and to a part of the increase of the stock was recognised by them.

The Act of 1848 was designed to protect a married woman in the enjoyment of her property which she acquired after its passage. Her marital relations prevent her enjoying it separate and apart from him. While living with him she may not have a possession separate and distinct from his possession. If, however, it be clearly shown that the original property was hers, then all the product and increase become hers, as long as they can be followed or identified. The fact that her husband acts as her agent in buying and selling and in investing her money, does not, against her consent, transfer her right of property to him.

We think there was sufficient evidence tending to show that many items of property levied on, were the product or increase of other property clearly proved to have been the estate of the plaintiff in error, and the question of her ownership should have been submitted to the jury. The mere fact that there may be difficulty in determining which articles are the product of her property did not justify the court in taking the question from the jury. While the husband is entitled to the reasonable services of his wife, yet if a portion of her time was occupied in the care and management of her separate property whereby its productiveness was increased, the product was not thereby made liable for his debts. We think the learned judge held the rule too stringently against the rights of the plaintiff in error, and in so far as the answers, and parts of the charge, covered by the assignments, are in conflict with this opinion, the assignments are sustained.

Judgment reversed, and a *venire facias de novo* awarded.